**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

GOVERNMENTCIO LLC
101 Constitution Avenue NW
Suite L110
Washington, D.C. 20001,

           Plaintiff,

   v.

RAY LANDRY
6 Richard Pearse Cove
Georgetown, Texas 78626,

           Defendant.

Civil Action No. 1:20-cv-949

**COMPLAINT**

For its complaint, Plaintiff GovernmentCIO LLC ("GCIO"), through counsel, states as follows:

**Nature of the Case**

1. For the past four years, GovernmentCIO has provided software development and related information technology services to the Financial Service Center ("FSC") in Austin, Texas under a prime contract with the Department of Veterans Affairs ("VA") (the "FSC Contract"). Defendant Ray Landry ("Landry") served as GCIO's deputy program manager.

2. Landry stopped working for GCIO in July 2019 but remained bound by a Non-Solicitation and Non-Disclosure Agreement (the "Agreement") that prohibited him from: (a) soliciting GCIO's current employees for one year after leaving GCIO; (b) hiring GCIO former employees for six months after they left; (c) interfering with GCIO's relationships with its employees and customers; and (d) disclosing GCIO's confidential and proprietary information.

3. On December 20, 2019, the VA awarded the follow-on contract to Favor TechConsulting, LLC ("FTC"), a GCIO competitor. FTC selected Landry to be its program manager the contract. Landry is now soliciting and hiring GCIO's incumbent employees and using GCIO's employee information and staffing strategy, all in violation of the Agreement.

4. Landry's actions are interfering with and irreparably harming: (a) GCIO's ability to satisfy its obligations to the VA for the remainder of GCIO's period of performance; (b) GCIO's reputation with the federal government; (c) the VA's performance assessment of the FSC Contract; and (d) GCIO's ability to obtain future contracts with the federal government and private entities.

### Parties

5. Plaintiff GCIO is a Maryland limited liability company with its principal address at 101 Constitution Avenue NW, Suite 100 West, Washington, DC 20001.

6. GCIO's sole member is Brian Moran, who is domiciled in Anne Arundel County, Maryland.

7. Defendant Landry is an individual domiciled in Texas.

### Jurisdiction and Venue

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because GCIO's federal trade secrets claim arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and 28 U.S.C. § 1367, because GCIO's state law claims arise out of the same nucleus of operative facts and form part of the same case or controversy as GCIO's federal claim.

9. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because GCIO's sole member, Moran, and Defendant Landry are citizens of different states and the amount in controversy exceeds $75,000.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district as the parties consented to jurisdiction and venue in this district and Plaintiff and its sole member are citizens of Maryland.

## Factual Allegations

### I. Landry Serves as GCIO's Deputy Program Manager on the FSC Contract.

11. On October 31, 2016, GCIO executed the FSC Contract with the VA to provide software development and related information technology services to the FSC in Austin, Texas.

12. The FSC is a franchise fund (fee-for-service) organization in the VA and provides a wide range of financial and accounting products and services to the VA and other agencies.

13. Beginning in September 2017, GCIO hired Landry to serve as deputy program manager on the FSC Contract.

14. Among other responsibilities, Landry was responsible for ensuring that GCIO's contract was fully staffed and for overseeing recruiting, vetting, hiring, and placing personnel.

15. Landry was regularly on site at the FSC in Austin, Texas, where he interacted with and supervised GCIO's employees and contractors.

16. As a result of his position, Landry was intimately familiar with GCIO's employees, their salaries, skillsets, and experience, and their importance to providing solutions to the VA.

17. Landry's LinkedIn page describing his responsibilities is attached as **Exhibit 1**.

### II. Landry Agrees to Protect GCIO's Trade Secrets and Not Solicit GCIO's Employees.

18. On June 13, 2018, Landry executed a Non-Solicitation and Non-Disclosure Agreement with GCIO ("the Agreement"), a copy of which is attached as **Exhibit 2.**

19. Paragraph 3 of the Agreement prohibits Landry from directly or indirectly disclosing GCIO's "Confidential and Proprietary Information" to third parties or using it for non-GCIO purposes.

20. Confidential and Proprietary Information is defined in Paragraph 2 of the Agreement and includes, but is not limited to, data concerning GCIO's contracts, employees, and methods.

21. Paragraph 5 of the Agreement prohibits Landry from directly or indirectly soliciting, inducing, or attempting to solicit or induce any current GCIO employee to leave GCIO for one year following the termination of Landry's employment with GCIO.

22. Paragraph 5 of the Agreement prohibits Landry from directly or indirectly hiring or employing any former employee of GCIO for one year after Landry's termination, unless the employee had not been employed by GCIO for at least six months.

23. Paragraph 7 of the Agreement prohibits Landry from interfering with GCIO's relationships with employees, teaming partners, customers, and others for two years following the termination of Landry's employment with GCIO.

24. These provisions are narrowly tailored to protect GCIO's business interests, including, but not limited to, its ability to: (a) perform under the FSC Contract; (b) retain employees with unique and hard-to-locate skill sets; (c) protect GCIO's time, training and investment in its employees; (d) protect GCIO's confidential and proprietary information from being utilized by competitors; and (e) maintain GCIO's competitive position.

25. Landry agreed in Paragraph 8 that a "breach or prospective breach of this Agreement will cause irreparable harm to [GCIO]," and consented to the issuance of a preliminary injunction upon any breach or threatened breach.

26. Landry was terminated from GCIO on July 23, 2019.

### III.   FTC—not GCIO—Wins the Recompete of the Contract for FSC.

27. In October 2019, the VA issued a request for proposals in connection with the recompete for a continuation of the same services provided by GCIO under the FSC Contract.

28. In December 2019, the VA awarded the follow-on contract to FTC, a competitor of GCIO.

29. Shortly thereafter, GCIO filed a bid protest with the Government Accountability Office ("GAO").

30. In January 2019, the VA extended GCIO's period of performance on the FSC Contract through May 30, 2020.

31. GCIO informed employees and subcontractor personnel that it intended to secure positions outside of the FSC for its personnel at the conclusion of GCIO's contract with FSC.

32. The GAO denied the bid protest on March 10, 2020.

**IV. Landry Solicits and Hires GCIO Personnel in Violation of the Agreement.**

33. FTC hired and selected Landry to serve as program manager for the follow-on contract.

34. Landy engaged in textbook solicitation in direct violation of the Agreement.

35. The following five examples make this clear.

36. First, in mid-March, FTC Chief Operating Officer Benjamin Lin presented GCIO with a list of GCIO personnel FTC wished to hire as subcontractors.

37. The list contained key GCIO employees performing the FSC Contract.

38. GCIO Senior Vice President of Veteran Affairs Megha Chokshi asked Lin how he selected the names of the employees that FTC would be interested in bringing on as subcontractors.

39. Lin confirmed that he had received the names from FTC's operations team.

40. Landry is FTC's Director of Operations, and GCIO thus believes that the names were provided to Lin by Landry given Landry's knowledge of GCIO's employees and their skill sets.

41. Although additional GCIO employees were discussed during GCIO's negotiations with Lin regarding a subcontract in which FTC would have engaged GCIO under the follow-on contract, FTC had already been reaching out to some of the employees before they were even mentioned by GCIO; employees were being contacted on their personal cell phones (the contact information for which GCIO did not provide to FTC); many of the GCIO employees ultimately solicited and/or hired by FTC were not named during GCIO's negotiations with Lin; and not everyone named during GCIO's discussions with Lin was hired.

42. Accordingly, GCIO believes and therefore alleges Landry used the Confidential and Proprietary Information received through his employment with GCIO to solicit FTC.

43. Second, Landry personally reached out to GCIO personnel and handled the negotiation of the terms of employment with FTC.

44. Third, Landry appeared at the FSC site during the week of March 9 and told GCIO's deputy program manager that there were positions with FTC available and Landry would be in a room at FSC if he wanted to discuss them.

45. Although many of the skilled software programmers—known as "Pega Developers"—had been teleworking, a large group of those programmers then showed up to the FSC site that day.

46. Fourth, GCIO employee Chad Levert informed GCIO that he would be joining FTC.

47. Levert also informed GCIO's program manager that he had conversations with Landry about negotiating a later start date with FTC, but that Landry pushed back.

48. GCIO's deputy program manager reached out to Landry to keep Levert at GCIO longer to perform the FSC Contract.

49. Landry replied that he could not allow the requested additional time because Landry had to report the number of incumbent hires he brought over to FTC by April 17.

50. Fifth, around the same time, FTC recruiters began selectively calling certain GCIO employees with specific skill sets and specialties and who had worked on the FSC Contract for GCIO to recruit them to FTC.

51. The foregoing actions, by Landry directly, and by FTC, reflect solicitation as well as inside knowledge of GCIO's confidential, proprietary, and trade secret information concerning its employees, their skillsets, experience, and their importance to the FSC Contract.

**V.    Landry's Actions Have Caused Irreparable Harm.**

52. Landry's solicitation has been effective.

53. GCIO employees on the FSC Contract have resigned from GCIO for FTC.

54. At least 15 GCIO employees have already accepted offers with FTC or left their employment with GCIO to work for FTC on the FSC follow-on contract.

55. Landry's solicitation efforts and his use of GCIO's Confidential and Proprietary Information concerning its employees and methods jeopardizes GCIO's ability to complete the FSC Contract, threatens GCIO's rating in the contractor performance assessment reporting system ("CPARS"), undermines GCIO's ongoing business opportunities for which these personnel were intended, and damages GCIO's goodwill and reputation.

56. The GCIO personnel leaving GCIO to work for FTC possess specialized skills and are necessary for GCIO to complete its obligations under the FSC Contract.

57. Without them, GCIO is harmed while Landry, and by extension FTC, is unjustly enriched.

## COUNT ONE
### (Breach of Contract)

58.	GCIO re-alleges and incorporates all factual allegations made above.

59.	Landry's Agreement with GCIO is valid and binding.

60.	Landry's Agreement protects GCIO's legitimate interests, including but not limited to its desire to protect the investment made in its employees, prevent competitors from using employee information to solicit employees, and preserve the confidentiality of information gleaned in the course of employment.

61.	Under Paragraph 3 of the Agreement, Landry may "not, at any time, disclose [Confidential and Proprietary Information] to others or use such information to Employee's own advantage or the advantage of others."

62.	Paragraph 2 of the Agreement defines Confidential and Proprietary Information to include, "but is not limited to, data concerning the Company's customers, contracts, task orders, prospective contracts, prospective task orders, technology, marketing plans, sales pipeline, proposals, technical solutions, pricing, services, employees, prospective customers, computer systems, manuals, designs, methods, improvements, trade secrets and inventions."

63.	Landry breached Paragraph 3 of the Agreement when he used GCIO Confidential and Proprietary Information to advantage himself and FTC, including but not limited to employee data and methods to:

    a.	provide FTC with information regarding GCIO employees who were working on the FSC Contract;

    b.	select which GCIO employees would benefit FTC and would be appropriate targets for solicitation efforts; and

    c.	negotiate with GCIO employees regarding the terms of employment at FTC.

64. Under Paragraph 5 of the Agreement, Landry may "not, directly, or indirectly, either on his/her own behalf or on behalf of any third party, solicit or induce, or attempt to solicit or induce, any current employee of [GCIO] to leave [GCIO] for any reason whatsoever. Employee also agrees that for a period of one (1) year after the termination of his/her employment with [GCIO], he/she will not, directly or indirectly, either on his/her own behalf or on behalf of any third party, hire or employ in any capacity (including as an employee, independent contractor, agent or consultant), any person who is a former employee of [GCIO], unless such person has not been employed by [GCIO] for a period of at least six (6) months."

65. Landry breached Paragraph 5 of the Agreement when he solicited and hired, or caused FTC to solicit and hire, GCIO employees, or attempted to do so, by:

    a. contacting GCIO employees in an attempt to induce them to work for FTC;

    b. participating in negotiations regarding the terms of employment at FTC;

    c. appearing at the FSC site and telling GCIO's deputy program manager that since FTC won the bid, there were positions with FTC available for the FSC follow-on contract and that Landry would be in a room at FSC if he wanted to discuss them; and

    d. telling GCIO's deputy program manager that he could not allow additional time for Levert to stay with GCIO before coming to FTC because he had to report the number of incumbent hires he brought over by April 17.

66. Under Paragraph 7 of the Agreement, Landry agreed that "for a period of two (2) years after the termination of his/her employment with [GCIO], he/she will not interfere with any relationship [GCIO] has with its employees, customers, teaming partners, prospective teaming partners, suppliers, vendors, agents, or representatives."

67. Landry breached Paragraph 7 of the Agreement when he interfered with GCIO's relationships with its customers and employees by:

   a. contacting GCIO employees to encourage them to work for FTC;

   b. participating in negotiations regarding the terms of employment at FTC;

   c. appearing at the FSC site and telling GCIO's deputy program manager that since FTC won the bid, there were positions with FTC available for the FSC follow-on contract and that Landry would be in a room at FSC if he wanted to discuss them;

   d. telling GCIO's deputy program manager that he could not allow additional time for Levert to stay with GCIO before coming to FTC because he had to report the number of incumbent hires he brought over by April 17; and

   e. sabotaging GCIO's ability to fully staff the FSC Contract for the VA and complete it successfully through May 30, 2020.

68. As a direct and proximate cause of these actions, Landry and, by extension FTC, have been unjustly enriched while GCIO will be forced to incur time and money to hire new personnel with similar skill sets and will suffer damages and lost profits that would have been generated by the departed employees had they remained at GCIO and continued to work on GCIO's other contracts.

69. As a direct and proximate cause of these actions, GCIO is also suffering irreparable harm for which there is no adequate remedy at law, including but not limited to: (1) a threatened inability for GCIO to continue to perform under the FSC Contract; (2) a loss of employees with unique and hard-to-fill skill sets; (3) a loss of Proprietary and Confidential Information to a competitor; (4) a weakened competitive position; (5) a loss of GCIO's goodwill with the VA and

other government agencies; (6) negative effects on GCIO's CPARS ratings and performance assessment, which are critical to GCIO's ability to win future government contracts; and (7) a hindered ability to secure future work, including business opportunities that GCIO has been pursuing based on a reasonable expectation that its FSC personnel would remain with GCIO through May 30, 2020.

70. Under Paragraph 8 of the Agreement, Landry agreed that his breach of the agreement "will cause irreparable harm" to GCIO and expressly consented to a preliminary injunction and temporary restraining order to prevent an actual or threatened breach.

71. GCIO has been irreparably harmed as a result of these actions and is entitled to damages and injunctive relief.

## COUNT TWO
### (Violation of the Defend Trade Secrets Act)
### (18 U.S.C. § 1836, *et seq*.)

72. GCIO re-alleges and incorporates all factual allegations made above.

73. Based on the conduct described above, Landry has also violated the federal Defend Trade Secrets Act ("DTSA").

74. Landry received and had access to GCIO's confidential and proprietary information during his employment with GCIO.

75. This information includes GCIO's employee, contractor, and subcontractor names, roles, skill sets, salaries, contracts, performance insights, and contact information; staffing plans and methodologies; pricing and rates; and recruiting methodologies and strategies.

76. All this information—including how it was used to support on the FSC Contract—constitutes trade secrets of GCIO and has significant independent economic value to GCIO from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

77. A company or person with access to this information would save significant time and money by not having to develop their own recruiting strategies and information.

78. These trade secrets are related to products or services used in, or intended for use in, interstate or foreign commerce, and they have market value both commercially and throughout the federal government.

79. Landry knew or had reason to know that his knowledge of these trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret.

80. GCIO has taken reasonable measures to protect this information and preserve its confidentiality, including but not limited to not making it publicly available and requiring Landry (and other employees with access) to execute the Agreement not to disclose such information to third parties or to use such information for non-GCIO purposes.

81. Landry used and misappropriated GCIO's Confidential and Proprietary information regarding GCIO employees to directly and indirectly solicit select GCIO employees that were staffed on the FSC Contract to join FTC, including by:

    a. providing FTC with information regarding GCIO employees who were working on the FSC Contract;

    b. selecting which GCIO employees would benefit FTC and would be appropriate targets for solicitation efforts; and

    c. negotiating with GCIO employees regarding the terms of employment at FTC.

82. Landry's misappropriation has harmed GCIO and continues to do so.

83. GCIO is entitled to damages for both actual loss and the unjust enrichment caused by Landry's actions that are not considered in computing actual loss.

84. Landry's actions were made in bad faith and were willful and malicious, entitling GCIO to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

85. Under 18 U.S.C. § 1836(b)(3)(D), GCIO is entitled to recover attorneys' fees.

86. Under 18 U.S.C. § 1836(b)(3)(A), injunctive relief is necessary to prevent actual or threatened misappropriation, which has or will cause injury for which there is no adequate remedy at law.

## COUNT THREE
### (Violation of the Texas Uniform Trade Secrets Act)
### (Tex. Civ. Prac. & Rem. Code § 134A)

87. GCIO re-alleges and incorporates all factual allegations made above.

88. For the same reasons that Landry has violated the Defend Trade Secrets Act, Landry has also violated the Texas Uniform Trade Secrets Act. ("TUTSA").

89. GCIO is entitled to damages for both actual loss and the unjust enrichment caused by Landry's actions that are not considered in computing actual loss under Tex. Civ. Prac. & Rem. Code § 134A.004(a).

90. Landry's actions were made in bad faith and were willful and malicious, entitling GCIO to exemplary damages under Tex. Civ. Prac. & Rem. Code § 134A.004(b).

91. Under Tex. Civ. Prac. & Rem. Code § 134A.005, GCIO is entitled to recover attorneys' fees.

92. Under Tex. Civ. Prac. & Rem. Code § 134A.005, injunctive relief is necessary to prevent actual or threatened misappropriation, which has or will cause injury for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, GCIO demands judgment in its favor against Landry:

A. Preliminarily and permanently enjoining Landry and any of the GCIO employees or subcontractors improperly solicited or hired to support the FTC's efforts on the follow-on contract with FSC from having any direct or indirect role on the follow-on contract;

B. Granting GCIO compensatory damages, in an amount not currently known, but in excess of $75,000;

C. Granting GCIO punitive or exemplary damages;

D. Awarding GCIO its costs and expenses, including reasonable attorneys' fees; and

E. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all claims triable by jury.

Dated: April 13, 2020

Respectfully submitted,

VENABLE LLP

/s/ Ashleigh J. F. Lynn
Ashleigh J. F. Lynn (Bar No. 30122)
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400 (telephone)
(410) 244-7742 (facsimile)
ajlynn@venable.com

James Y. Boland *(pro hac vice pending)*
Nicholas M. DePalma *(pro hac vice pending)*
Kevin W. Weigand *(pro hac vice pending)*
Taylor S. Chapman *(pro hac vice pending)*
8010 Towers Crescent Drive, Suite 300
Tysons, Virginia 22182
(703) 760-1997 (telephone)
(703) 821-8949 (facsimile)

jyboland@venable.com
nmdepalma@venable.com
kwweigand@venable.com
tschapman@venable.com

*Counsel for Plaintiff GovernmentCIO LLC*