IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GOVERNMENTCIO, LLC** | * | |
| | * | |
| v. | * | Civil Action No. CCB-20-0949 |
| | * | |
| **RAY LANDRY** | * | |
| | * | |
| | ***** | |

## MEMORANDUM

This is a breach of contract and misappropriation of trade secrets action. Ray Landry, the defendant, formerly worked for the plaintiff, GovernmentCIO. After Landry was terminated and took a job with a new company, GovernmentCIO contends he used its proprietary information to hire its employees to work for the new company in violation of a non-solicitation and non-interference provision in his employment contract and in violation of the trade secrets laws. Landry has filed a motion to dismiss (ECF 23). The matter is now fully briefed and no oral argument is necessary. *See* Local Rule 105(6). For the reasons discussed herein, the motion will be denied.

## BACKGROUND

In 2016, GovernmentCIO ("GCIO"), the plaintiff in this action, was awarded a contract (the "FSC Contract") with the Department of Veteran Affairs ("VA") to provide software development and IT services to the Financial Services Center—a fee-for-service organization within the VA—located in Austin, Texas. (ECF 19, Am. Compl. ¶¶ 1, 14–15). Ray Landry, the defendant in this action, was hired in September 2017 to serve as GCIO's deputy program manager for the FSC Contract, making him responsible for staffing the contract and overseeing the recruiting and placement of personnel. (*Id.* ¶¶ 1, 16–17).

As a condition of employment, Landry executed a non-disclosure and non-competition agreement ("the 2017 Agreement"). (*Id.* ¶ 21; *see also id.*, Ex. 2). The 2017 Agreement prohibits

1

Landry from disclosing any proprietary information, including information relating to the way GCIO conducts its business; from competing with GCIO for one year following his termination; and from soliciting, recruiting, hiring, or interfering with GCIO's relationship with any of its employees for two years following his termination. (*See id.*, Ex. 2, 2017 Agreement ¶¶ 1, 5, 6).

Later, on June 13, 2018, Landry executed a non-solicitation and non-disclosure agreement ("the 2018 Agreement") "as a condition for continued employment" with GCIO. (*Id.* ¶ 25; *see also id.*, Ex. 3, 2018 Agreement). The 2018 Agreement, similar to the 2017 Agreement, prohibits Landry from disclosing or using confidential and proprietary information, including data about GCIO's employees and methods; from soliciting or hiring GCIO's employee's for one year following his termination, unless that employee had not been employed by GCIO for at least six months; and from interfering with GCIO's relationships with its employees for two years following his termination. (*Id.*, Ex. 3, 2018 Agreement ¶¶ 2, 5, 7).

On July 23, 2019, Landry was terminated from his position at GCIO. (*Id.* ¶ 44). In October 2019, the VA issued a request for bids to provide the same services GCIO provided under the FSC Contract. (*Id.* ¶ 45). The VA awarded the contract to FavorTech Consulting LLC ("FavorTech") and hired Landry to be its program manager for the contract. (*Id.* ¶ 3). Thereafter, GCIO alleges that Landry "engaged in textbook solicitation" in direct violation of his non-solicitation and non-interference agreements. (*Id.* ¶ 52; *see also id.* ¶¶ 54–68).

GCIO offers several examples it contends are indicative of these violations. First, FavorTech's Chief Operating Officer Benjamin Lin received the names of key personnel who had performed under the FSC Contract, and GCIO "believes that [these] names were provided to Lin by Landry" because many of the GCIO employees hired by FavorTech were contacted via their personal cell phone numbers, which GCIO had not provided to FavorTech but to which Landry

would have had access, and because Lin received the names from the team Landry directed. (*Id.* ¶¶ 54–60). Second, Landry personally contacted GCIO personnel and negotiated their terms of employment with FavorTech. (*Id.* ¶ 61). Third, Landry appeared at the FSC site in March 2020 and told GCIO's deputy program manager that FavorTech was hiring and that Landry was available to meet with him to discuss the available position. (*Id.* ¶ 62). Fourth, when GCIO employee Chad Levert informed GCIO he would join FavorTech, he noted that he had negotiated with Landry over obtaining a later start date at FavorTech, and Landry—who was required to report the number of incumbent hires he brought to FavorTech by April 17—pushed back against the later start date. (*Id.* ¶¶ 65, 67). Finally, during this time period, FavorTech recruiters began to call GCIO employees with specific skill sets who had worked on the FSC Contract to recruit them to FavorTech. (*Id.* ¶ 68).

At least fifteen GCIO employees accepted offers with FavorTech. (*Id.* ¶ 72). On April 27, 2020, the VA advised GCIO it was terminating the FSC Contract effective May 1, 2020, about thirty days prior to the contract's previously agreed-upon date of conclusion. (*Id.* ¶ 73). GCIO believes that Landry's solicitation efforts and his use of GCIO's "confidential and proprietary information" caused GCIO to lose revenue and profits it would have received in the remaining thirty days of the FSC Contract and caused harm to GCIO's goodwill and reputation. (*Id.* ¶ 76).

GCIO brought this action on April 13, 2020, asserting claims for breach of contract and for violations of the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act. (ECF 1). GCIO amended its complaint on June 8, 2020. (ECF 19). Landry then filed a motion to dismiss on June 22, 2020. (ECF 23). The matter is fully briefed and ripe for consideration.

**STANDARD OF REVIEW**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

**DISCUSSION**

GCIO's complaint contains four counts: (1) breach of the 2018 Agreement; (2) breach of the 2017 Agreement (in the alternative); (3) violation of the federal Defend Trade Secrets Act; and (4) violation of the Texas Uniform Trade Secrets Act. The court will first address the breach of contract claims and then the trade secrets claims.

I.      **Breach of Contract Claims**

GCIO alleges Landry breached the 2018 Agreement's prohibition on disclosing confidential and proprietary information, soliciting GCIO's employees, and interfering with GCIO's relationship with its employees. Landry raises several arguments in response.

As a threshold matter, Landry contends that the 2018 Agreement is void for lack of consideration. Consideration is necessary to make a promise enforceable. *Rinck v. Ass'n of Reserve City Bankers*, 676 A.2d 12, 16 (D.C. 1996).[1] This requires that performance or a return promise must be bargained for; it must be sought by the promisor in exchange for his promise and be given by the promisee in exchange for that promise. *Id*. An employer "may prospectively modify the terms of at-will employment" and continued service after such modification "amounts to acceptance of the modification." *Kaufmann v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008). District of Columbia courts view "future performance by each [party] as valid consideration for [a] change in terms" because neither party is bound to continue performance under an at-will employment contract. *Id*. In this case, Landry executed the 2018 Agreement "as a condition for continued employment with GCIO[.]" (ECF 19, Am. Compl. ¶ 25). The 2018 Agreement "does not create a guarantee of employment for any period of time." (*Id.*, Ex. 3, 2018 Agreement ¶ 13). Thus, under District of Columbia law, the 2018 Agreement is an at-will contract and continued performance under it serves as legally sufficient consideration for the promises he made in the agreement.[2]

---

[1] The parties agree that the 2018 Agreement, pursuant to its choice of law provision, is governed by District of Columbia law. (*See* ECF 19, Ex. 3, 2018 Agreement ¶ 14).

[2] *Ellis v. James V. Hurson Associates, Inc.*, cited by Landry, is not to the contrary. That case held only that continued employment for a substantial period of time is sufficient for consideration; it did not hold that continued employment for a substantial period of time is necessary for consideration. *See* 565 A.2d 615, 620 (D.C. 1989). And in any event, Landry continued his employment with GCIO for over a year after signing the 2018 Agreement.

Landry also argues that the non-solicitation and non-interference provisions of the 2018 Agreement are unreasonable. The District of Columbia courts have adopted the Second Restatement of Contract's position that such provisions are unreasonably in restraint of trade if "(a) the restraint is greater than needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public." *Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615, 618 (D.C. 1989) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 186); *see also Deutcsch v. Barsky*, 795 A.2d 669, 675 (D.C. 2002). Whether a restriction is reasonable is "determined in the light of the circumstances of the transaction" by examining factors such as "the protection that [the restriction] affords for the promisee's legitimate interests, the hardship that it imposes on the promisor, and the likely injury to the public." RESTATEMENT (SECOND) OF CONTRACTS § 186, comment a.

Landry contends that the provisions of the 2018 Agreement are unreasonable because the non-solicitation provision bans solicitation for one year while the non-interference provision bans the same conduct for two years. It is true that there is some overlap in the provisions, as one prohibits soliciting the company's employees and the other prohibits interfering with the company's relationship with its employees. Still, by its plain terms, the non-interference provision is much broader in scope than the non-solicitation provision, regulating not just Landry's contacts with GCIO employees but also with suppliers, vendors, agents, and representative. (*See* ECF-19, Am. Compl., Ex 3, 2018 Agreement ¶¶ 5, 7). In any event, Landry's alleged conduct occurred less than a year after his termination and therefore it could plausibly be restrained under either provision. Landry's counsel represents they were unable to find any cases where a court has upheld the validity of two non-solicitation provisions with varying durations. Yet neither has counsel

6

provided the court with a single case where a court has struck down such provisions. The court does not find this argument persuasive and will not invalidate the provisions on this ground.

Landry also contends that the provisions are unreasonable because they are facially overbroad insofar as they restrict an employee from soliciting or interfering with "any" employee of GovernmentCIO without any geographical or other limitation. Landry relies on *Ameritox, Ltd. v. Savelich* for the proposition that to be enforceable a restrictive covenant must "'be specifically targeted at preventing former employees from trading on the goodwill they generated during their former employment.'" 92 F. Supp. 3d 389, 400 (D. Md. 2015) (quoting *Allegis Grp., Inc. v. Jordan*, No. GLR-12-2535, 2014 WL 2612604, at *9 (D. Md. June 10, 2014)). In *Allegis Group v. Jordan*, the case on which *Ameritox* relied for that proposition, the defendant challenged a non-solicitation provision that barred him from soliciting any of Aerotek's employees, where the relevant contract defined "Aerotek" as not just Aerotek itself but also all its related companies. 2014 WL 2612604, at *9.[3] Thus, the provision barred the defendant not just from soliciting employees with whom he had worked and developed goodwill at Aerotek but also from soliciting employees at any related companies with whom he had never worked or generated goodwill. *Id.*

In this case, the court finds that the provision at issue is not overly broad or unreasonable. First, under District of Columbia law, non-solicitation provisions directed at prohibiting solicitation of employees with whom the defendant worked need not have territorial restrictions to be valid. *See Ellis*, 565 A.2d at 620; *cf. Legal Tech. Grp., Inc. v. Mukerji*, No. 17-631 (RBW), 2019 WL 9143477, at *6 (D.D.C. June 10, 2019) (noting that a non-compete provision prohibiting solicitation of clients and lacking a territorial restriction was not challenged but was nevertheless

---

[3] Unpublished opinions are cited for the soundness of their reasoning and not for their precedential value.

7

valid). Next, there is nothing in the complaint that indicates the provisions go so far as to restrain Landry from soliciting employees with whom he had never worked, as in *Allegis Group*. Landry also contends that GCIO provides software development and related IT services to government agencies across the United States, but the complaint lists only the VA in Austin, Texas as a client. (*See* ECF 19, Am. Compl. ¶ 1). Resolving all inferences in GCIO's favor, as the court must at this stage of proceedings, the court cannot conclude that the provisions are overly broad. Accordingly, the court will not dismiss the breach of contract claims against Landry.[4]

## II. Trade Secrets Claims

The elements of a trade secret claim under the federal statute and the Texas statute are very similar. Under the federal statute, a plaintiff must allege (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce. *See Philips N. Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020); *see also* 18 U.S.C. §1836(b)(1). Under the Texas statute, a plaintiff must allege (1) an existing trade secret; (2) acquired through improper means; and (3) the defendant disclosed the trade secret without authorization from the plaintiff. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015); *see also* Tex. Civ. Prac. & Rem. Code § 134A.

In this case, GCIO alleges that Landry used GCIO's confidential and proprietary information regarding its employees, staffing plans and methodologies, pricing and rates, and recruiting methodologies and strategies to improperly solicit GCIO employees to work for FavorTech in breach of the 2018 Agreement's prohibitions on disclosing confidential and

---

[4] In Count II, GCIO alleges in the alternative that Landry breached the 2017 Agreement. Because the court finds that the 2018 Agreement is valid, it need not reach Landry's arguments seeking to dismiss the breach of contract claim in Count II at this time.

proprietary information, soliciting GCIO's employees, and interfering with GCIO's relationship with its employees. GCIO contends this conduct violates both the federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act. In response, Landry argues that GCIO has failed to plausibly allege either the existence of a trade secret or misappropriation. The court will address each element in turn.

### A. Existence of a Trade Secret

Both the federal statute and the state statute define a trade secret as information the owner has taken reasonable measures to keep secret and which derives independent economic value from being not generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).

GCIO pleads that its employee, contractor, and subcontractor contact information, skill sets, salaries, contracts, and contact information as well as its staffing plans and methodologies are trade secrets within the meaning of these statutes. (ECF 19, Am. Compl. ¶ 116). In support of its position, GCIO cites three cases, all decided at the preliminary injunction stage, holding that various forms of employee information could constitute trade secrets. *See First Foundation, Inc. v. Giddings*, No. CV 20-00359-DOC-KES, 2020 WL 1082641, at *1, *6 (C.D. Cal. Mar. 7, 2020) (holding plaintiff had demonstrated likelihood of success on merits of California trade secret claim and ordering defendants not to use plaintiff's confidential employee information, including a list of names, contact information, and compensation); *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) (employee compensation structures could constitute a trade secret under Texas law); *Kelly Servs., Inc. v. Greene*, 535 F. Supp. 2d 180, 187 (D. Me. 2008) ("employee information" could constitute trade secret under Michigan law).

In response, Landry cites a series of cases holding that customer lists and employee lists which are readily ascertainable do not constitute trade secrets. S*ee Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003) (readily ascertainable customer list not trade secret under Texas law); *Finish Line, Inc. v. Foot Locker, Inc.*, No. 1:04CV877RLYWTL, 2006 WL 146633, at *8 (S.D. Ind. Jan. 18, 2006) (list of district manager names, phone numbers, and home address not a trade secret under Indiana law because, among other reasons, it did not consist of such extensive and detailed information and the information was publicized in public directories); *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1044–45 (N.D. Cal. 1990) (customer list consisting of small and large companies are not trade secrets because they are easily discoverable through public sources, but employee lists may be trade secrets if they have information about employee skills and preferences which are not publicly available).

As the cases cited by the parties make clear, there is no bright-line rule with respect to lists of employees. Instead, the analysis is sensitive to context and courts generally ask whether (1) the employer took steps to maintain the confidentiality of its information; (2) the employee acknowledged such information was confidential; and (3) the information was readily ascertainable. *See Guy Carpenter*, 334 F.3d at 467–68 (collecting cases and analyzing these factors to determine whether a customer list constitutes a trade secret). Whether a particular category of information qualifies as a trade secret is determined as a matter of law. *Id.* at 468.

In this case, GCIO pled that (1) it kept its personnel information private and required its employees to sign non-disclosure agreements, (ECF 19, Am. Compl. ¶ 121); (2) Landry therefore acknowledged that the information was to be kept confidential, (*id.* ¶ 120); and (3) the information

was not readily ascertainable, (*id.* ¶ 117).[5] Additionally, GCIO pled that a company with access to its personnel information—as FavorTech eventually obtained—would save significant time and money by not having to develop its own recruiting strategies. (*Id.* ¶ 118). In sum, GCIO alleged that it took reasonable steps to protect its confidential information and that such information was of independent economic value. This is sufficient to allege the existence of a trade secret.

### B. Misappropriation

Under both the federal statute and the Texas statute, misappropriation occurs when there is "disclosure or use of a trade secret . . . without express or implied consent by a person who, at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II)); *see also* Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b) (similar).

In this case, the complaint indicates that Landry lacked GCIO's consent to disclose any information to FavorTech and, given the terms of both the 2017 Agreement and the 2018 Agreement, that Landry should have known the information was acquired under circumstances giving rise to a duty of secrecy. Landry's primary contention, then, is that GCIO has failed to connect the dissemination of GCIO's employee contact information to him personally and that the complaint generally relies on "information and belief" allegations.

---

[5] Landry's arguments to the contrary are not persuasive. First, Landry argues that the amended complaint fails to address what steps GCIO took to maintain confidentiality of the information at issue, but GCIO specifically pled that it required its employees to sign non-disclosure agreements. (*See* ECF 19, Am. Compl., ¶ 121). Next, Landry attaches to its motion his public LinkedIn profile to argue that GCIO's employee information was readily ascertainable, but it is not clear—without having access to a list of GCIO employees—how exactly FavorTech would have been able to use LinkedIn to obtain the contact information for all of the specific employees who worked on the relevant contract; at most this creates an issue of fact improper for resolution at this stage of the proceedings.

It is true that GCIO's allegations are not always definitive. (*See*, *e.g.*, ECF 19, Am. Compl. ¶ 60 ("GCIO believes and therefore alleges Landry used the [confidential information] . . .")). Yet a plaintiff is under no obligation to prove his case at the pleading stage. Pleading based on information and belief is permitted when essential information lies within the control of another party and when the pleading sets forth the specific facts upon which the belief is reasonably based. *See Adobe Sys. Inc. v. Gardiner,* 300 F. Supp. 3d 718, 728 n.5 (D. Md. 2018); *see also N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010). Here, Landry and FavorTech alone—not GCIO—know whether Landry in fact disclosed GCIO's employee lists. GCIO has alleged sufficient factual details that the court may reasonably infer such a disclosure. Among other things, GCIO alleges that Landry managed a project for GCIO before working for FavorTech (ECF 19, Am. Compl. ¶¶ 1–5); that FavorTech's COO presented GCIO with a list of names of GCIO employees it wished to hire, which it obtained from FavorTech's operations team (*id.* ¶¶ 54–57); that Landry was the head of that operations team (*id.* ¶ 58); that FavorTech called GCIO employees on their personal cell phones to solicit them, even though GCIO had never disclosed their personal cell phone numbers to FavorTech (*id.* ¶ 59); and that FavorTech later hired at least fifteen of GCIO's former employees, (*id.* ¶ 72). That GCIO cannot yet prove that Landry in fact disclosed the information to FavorTech is immaterial at the pleading stage; it is plausible that Landry did so and the claim is therefore not subject to dismissal.

\*\*\*

In sum, GCIO has plausibly alleged the existence of a trade secret and misappropriation. At the motion to dismiss stage, the court is persuaded that GCIO has pled a claim that is plausible on its face. *See Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2018 WL 10069553, at \*8 (W.D. Va. May 21, 2018) (collecting cases demonstrating that a claim for

misappropriation under the federal statute requires only enough facts to state a claim to relief that is plausible on its face). Accordingly, the court will not dismiss GCIO's trade secrets claims.

## CONCLUSION

For the reasons described herein, the motion to dismiss will be denied. Landry will be directed to file an answer to GCIO's amended complaint. A separate order follows.

3/22/2021
Date

/s/
Catherine C. Blake
United States District Judge